# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| MICHAEL LITTMAN, | ) | Case No. 07-20034-TLM |
| | ) | |
| Debtor. | ) | MEMORANDUM OF DECISION |
| _____ | ) | |

This chapter 7 case presents issues under the means test of amended § 707(b).[1]  The United States Trustee ("UST") filed a motion under § 707(b)(1), Doc. No. 22 (the "Motion"), contending the granting of chapter 7 relief would be an abuse and that, unless this case is converted voluntarily to chapter 13, it should be dismissed.  To resolve this Motion, the Court must evaluate whether child support payments due under a post-petition state court order may be deducted under § 707(b)(2)(A)(iv) in calculating the presumption of abuse, and whether "special circumstances" are shown under § 707(b)(2)(B) to rebut the presumption of abuse if it arises.[2]

The Motion was heard on May 14, 2007, and taken under advisement.  The Court has considered the briefing and arguments of the parties, and the applicable

---

[1]  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005), became effective October 17, 2005, and applies to this case.

[2]  The UST's motion to dismiss the case also raised an issue under § 707(b)(3)(B).  *See* Doc. No. 22 at 4-5.  That contention was abandoned by the UST immediately before hearing.  *See* Doc. No. 28 at 1.  Therefore, the Court does not address or reach any § 707(b)(3) issues.

MEMORANDUM OF DECISION - 1

authorities.  The following constitutes its findings and conclusions in this matter.

Fed. R. Bankr. P. 7052, 9014.

**BACKGROUND AND FACTS**

Michael Littman ("Debtor") filed his chapter 7 petition on February 5, 2007.[3]  Doc. No. 1.  Debtor filed his means test form, Official Form 22A, at the same time as his petition.  *See* Doc. No. 2.

At the time of filing, Debtor and his wife were separated.  Their divorce was finalized April 18, 2007.  *See* Ex. J.  According to the divorce decree, Debtor and his wife have joint physical and legal custody of their 17-year-old daughter and his wife has primary residential custody.

Debtor was ordered on March 8, 2007 to make child support payments of $735.00 a month, retroactive to February 2007.[4]  Those support payments will end on his daughter's 18th birthday or, if she is pursuing a high school education, will end when she graduates from high school or reaches the age of 19 years, whichever occurs first.  The daughter will turn 19 in August of 2008 and will likely graduate high school earlier that year.  Accordingly, Debtor's court-ordered

---

[3] His debts are primarily consumer in nature, *see* § 101(8), and that threshold for application of the means test, *see* § 707(b)(1), is met.

[4] *See* Ex. A (Temporary Order).  The Temporary Order, recognizing that Debtor could not have timely made the February payment, required that payment be paid in monthly instalments of $50.00.  Thus the first monthly payment to be made after entry of the Order was $785.00 and the next 14 payments would be similarly increased.  The payment requirements under the Temporary Order were restated in the divorce decree entered in April of 2007, Ex. J.

MEMORANDUM OF DECISION - 2

child support obligations will end some time in the summer of 2008.[5]  In addition

to this child support, Debtor pays $329.00 a month for his daughter to attend a

faith-based private school.  Ex. D.

At the time of filing, Debtor had current monthly income ("CMI")[6] of

$6,891.00.[7]  He had $7,018.42 in claimed monthly expenses, which included the

court ordered child support payment of $785.00.[8]  Based on those figures, Debtor

---

[5] The $50.00 per month instalments needed to pay the February, 2007 support will conclude at about the same time.

[6] Section 101(10A) states:

The term "current monthly income"–

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

[7] Following two amendments of Form 22A and subsequent discussions, Debtor and the UST stipulated to this figure at the May 14 hearing.  *See* Doc. Nos. 2, 20, 25.

[8] *See* Doc. No. 25 at line 28.  This expense figure also includes a $1,929.70 monthly tax payment.  As with the CMI amount, this tax figure was stipulated to at hearing following numerous amendments and negotiations between Debtor and the UST.  The now agreed expenses also include a $125.00 monthly deduction for his daughter's private school tuition (line 38), *see* § 707(b)(2)(A)(ii)(IV), and a $749.00 monthly charitable contribution (line 40).

MEMORANDUM OF DECISION - 3

would have negative monthly disposable income of ($127.42).

The § 341(a) meeting of creditors was held on March 8, 2007.  Two days later, the UST filed a statement of presumed abuse.  Doc. No. 15.  *See* § 704(b)(1)(A).  The UST's Motion to dismiss Debtor's case followed on April 6, 2007.  *See* § 707(b)(1); § 704(b)(2).  At hearing, Debtor and the UST stipulated to several facts and resolved certain issues, some of which have already been noted above.  However, disputes remain.

The UST argues that Debtor cannot deduct the $785.00 monthly court-ordered child support payment, incurred under the post-petition state court order, as an allowable expense on his Official Form 22A.[9]  Resolution of this issue is important because, without this expense, Debtor will have monthly disposable

---

[9]  Official Form 22A is entitled the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation.  The Form (which must be used, *see* Fed. R. Bankr. P. 9009), provides a means for debtors to comply with the requirements of § 521(a)(1)(B)(v), providing "The debtor shall file – a statement of the amount of monthly net income, itemized to show how the amount is calculated."  It also addresses § 707(b)(2)(C), which provides: "As part of the schedule of current income and expenditures required under section 521, the debtor shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under subparagraph (A)(i), that show how each such amount is calculated."  *See also* Interim Fed. R. Bankr. P. 1007(b)(4), which states:

> Unless § 707(b)(2)(D) applies, an individual debtor in a chapter 7 case with primarily consumer debts shall file a statement of current monthly income prepared as prescribed by the appropriate Official Form, and, if the debtor has current monthly income greater than the applicable median family income for the applicable state and household size, the calculations in accordance with § 707(b), prepared as prescribed by the appropriate Official Form.

These several provisions were addressed in *In re Beacher*, 358 B.R. 917, 919-20 (Bankr. S.D. Tex. 2007).  *Beacher* further noted that BAPCPA amended 28 U.S.C. § 2075 to require the Supreme Court to "prescribe a form for the statement required under § 707(b)(2)(C)" and that Form 22A was intended to implement the requirements of the statute and rules.  *Id.* at 920.

MEMORANDUM OF DECISION - 4

income on line 50 of Form 22A of $657.58.[10]  That monthly income, when

multiplied by 60 is $39,454.80 and would trigger a presumption that Debtor's

filing was an abuse of the provisions of chapter 7.[11]  If that presumption arises,

Debtor bears the burden of establishing "special circumstances" under

§ 707(b)(2)(B) to rebut it.

**DISCUSSION AND DISPOSITION**

    **A.    Overview of § 707(b)**

    Section § 707(b)(1) states in relevant part:

> After notice and a hearing, the court, on its own motion or on a
> motion by the United States trustee, trustee (or bankruptcy
> administrator, if any), or any party in interest, may dismiss a case
> filed by an individual debtor under this chapter whose debts are
> primarily consumer debts, or, with the debtor's consent, convert such
> a case to a case under chapter 11 or 13 of this title, if it finds that the
> granting of relief would be an abuse of the provisions of this chapter.

    In 1984, the predecessor to current § 707(b) was enacted under the

Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353,

§ 312, 98 Stat. 333.  It established a presumption in favor of chapter 7 relief.

However, it allowed the court on its own motion to determine if such relief would

---

[10]  The parties agreed that Debtor's income is $6,891.00.  The agreed expenses and
deductions other than the child support is $6,233.42.  (Total of all expenses and deductions of
$7,018.42 less $785.00 = $6,233.42.)  Subtracting the latter figure from monthly income yields
$657.58.  ($6,891.00 - $6,233.42 = $657.58.)

[11]  To pass the means test, the amount reached when a debtor's CMI is reduced by
allowable expenses and then multiplied by 60 must be less than the lesser of: (I) the greater of
25% of nonpriority unsecured claims or $6,000.00; or (II) $10,000.00.  *See* § 707(b)(2)(A)(i)(I)
and (II).

MEMORANDUM OF DECISION - 5

be a "substantial abuse" of the provisions of chapter 7. No other parties were given standing to raise this issue, and the motion of the court (or after 1986, the UST)[12] could not be "at the request or suggestion of any party in interest."

In the several years leading to BAPCPA, there were those who expressed a concern that, notwithstanding § 707(b), some portion, perhaps a substantial portion, of chapter 7 debtors had an ability to repay creditors and should be in chapter 13 if in bankruptcy at all. In attempting to address this concern, Congress reduced the "substantial abuse" standard to simply one of "abuse." Congress also generally eliminated the restrictive standing under which only the court or UST could bring motions to test chapter 7 cases for abuse. *See* § 707(b)(1) (adding the case trustee and any party in interest to those authorized to bring dismissal motions).[13]

Congress further elected to impose a "means test" to evaluate whether a debtor had an ability to pay creditors to an extent where chapter 7 relief would be abusive. This presumption replaced the prior presumption in favor of a debtor's choice of chapter 7. Section 707(b)(2)(A) provides:

> (i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and

---

[12] The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, § 219 (1986), added language allowing the UST to raise the motion.

[13] Limitations on standing still exist in § 707(b)(2)(D), § 707(b)(6) and § 707(b)(7). These sections are not implicated in the present case.

MEMORANDUM OF DECISION - 6

multiplied by 60 is not less than the lesser of–

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $ 6,000, whichever is greater; or

(II) $ 10,000.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which

MEMORANDUM OF DECISION - 7

the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

Failing this test creates a presumption of abuse which, unless adequately

rebutted by the debtor under § 707(b)(2)(B), justifies the court in dismissing the

case unless the debtor consents to a conversion to chapter 11 or chapter 13. *See*

MEMORANDUM OF DECISION - 8

§ 707(b)(1).[14]

Under § 707(b)(2)(A)(i), a debtor's current monthly income, as calculated under § 101(10A), is reduced by the amounts determined under clauses (ii), (iii) and (iv) of § 707(b)(2)(A), which establish the expenses chapter 7 debtors may claim for purposes of the means test. Under these provisions, debtors may deduct their "applicable monthly expense amounts" specified under the Internal Revenue Service's National and Local Standards,[15] as well as the actual amounts expended within the IRS categories of Other Necessary Expenses "as in effect on the date of the order for relief[.]" *See* § 707(b)(2)(A)(ii)(I).[16] Debtors may also claim various other enumerated expenses including continued support for an elderly, chronically ill, or disabled household members, certain projected chapter 13 administrative expenses, and private school costs up to $1,500.00 annually. *See* § 707(b)(2)(A)(ii)(II) through (V). Debtors may deduct average monthly

---

[14] Failing the means test does not necessarily guarantee dismissal. *See In re Skvorecz*, 2007 WL 1378348 at *3 (Bankr. D. Colo. May 11, 2007). On the other hand, given § 707(b)(3), passing the test does not guarantee a debtor may avoid dismissal. *See In re DePellegrini*, 2007 WL 1429037 at *2 (Bankr. S.D. Ohio April 26, 2007).

[15] The National Standards fix expenses for "Allowable Living Expenses" such as food, housekeeping supplies and clothing. The Local Standards fix deductions for transportation and housing depending on the debtor's geographic region and, as to housing costs, county of residence. *See* UST website at http://www.usdoj.gov/ust/eo/bapcpa/20070201/meanstesting.htm.

[16] There is significant debate in the case law regarding how the IRS standards are incorporated. *See, e.g.*, *In re Smith*, 2007 WL 1836874 at *5-6 (Bankr. N.D. Ohio June 22, 2007) (surveying split); *In re Armstrong*, 2007 WL 1724955 at *3 (Bankr. E.D. Wash. June 12, 2007) (same). The Court need not address such issues in this case.

MEMORANDUM OF DECISION - 9

payments for secured debts under § 707(b)(2)(A)(iii)[17] and payments on "all priority claims (including priority child support and alimony claims) under § 707(b)(2)(A)(iv).[18]

Total allowable expenses are deducted from CMI, producing the debtor's monthly disposable income.  This figure is then multiplied by 60 and compared to the applicable threshold amounts contained in § 707(b)(2)(A)(i) to see if the presumption arises.[19]

The UST is obligated to file a "statement" as to whether the filing would be presumed to be abusive under § 707(b) not later than 10 days after the § 341(a) meeting, *see* § 704(b)(1), and to file not later than 30 days after the filing of that statement either a motion to dismiss or convert or another "statement" explaining why the UST does not feel such a motion is appropriate, *see* § 704(b)(2).[20]

---

[17]  The allowable monthly secured debt deductions under clause (iii) are actually an average of what is "contractually due" over the ensuing 60 months.  There is disagreement among courts on how to interpret and apply this provision in chapter 7 cases.  *See, e.g., In re Ray,* 362 B.R. 680 (Bankr. D.S.C. 2007) (disallowing expense where debtor intended to surrender property securing such debt); *In re Longo,* 364 B.R. 161 (Bankr. D. Conn. 2007) (allowing expense notwithstanding such intent).  No such issues are raised in the present case.

[18]  Priority debts under clause (iv) are also calculated by taking the total and dividing by 60.

[19]  *See* Official Form 22A at Part VI (lines 48-55).

[20]  Interim Fed. R. Bankr. P. 1017(e)(1) establishes that "[e]xcept as otherwise provided in section 707(b)(2), a motion to dismiss a case for abuse under § 707(b) or (c) may be filed only within 60 days after the first date set for the meeting of creditors under § 341(a)" unless extended by order of the court.  Under Interim Rule 1017(e)(2), a 60 day deadline also applies to a notice of hearing if the motion is brought by the court *sua sponte.  DePellegrini*, 2007 WL 1429037, explains that the § 707(b)(2) motion is subject to the § 704(b)(2) 30 day deadline after the UST's § 704(b)(1) statement, and that the 60 day deadline under Interim Rule 1017(e)(1) applies to
(continued...)

MEMORANDUM OF DECISION - 10

If the presumption arises, the debtor may attempt under § 707(b)(2)(B) to

rebut it.  That provision states:

> (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide–
>> (I) documentation for such expense or adjustment to income; and
>> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.
> (iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of–
>> (I) 25 percent of the debtor's nonpriority unsecured claims, or $ 6,000, whichever is greater; or
>> (II) $ 10,000.

**B.    Debtor may not deduct the child support payment incurred post-petition**

Courts and commentators have debated the extent to which the means test is

_____

[20](...continued)
motions under § 707(b)(3).  *Id.* at *1 (also citing *In re Singletary*, 354 B.R. 455, 465 (Bankr. S.D. Tex. 2006)).

MEMORANDUM OF DECISION - 11

a rigid and inflexible device, or is subject to interpretation and adjustment.[21]  Many

of the specific issues debated need not be reached in the instant case.  However,

the UST does argue that the child support, as a *post*-petition imposed expense,

cannot be included in the § 707(b)(2) formulaic calculations.  Essentially the UST

argues for a bright-line cutoff at the petition date.  Debtor urges inclusion of the

expense, which arose within a month of filing and was specifically made

retroactive.  The Court concludes the UST is correct.

      The function of the means test is to screen cases immediately upon filing

and determine if debtors' finances at filing (as determined by that test) suggest

abuse and require dismissal.[22]  Setting aside the debate over the utility or accuracy

---

      [21] *Compare, e.g., In re Walker*, 2006 WL 1314125 at *5 (Bankr. N.D. Ga. May 1, 2006)
(noting that the means test is "to be applied by reference to the debtor's financial condition on the
petition date" and is "a backward looking test, which is designed to measure the debtor's financial
health at the time of the filing and to determine whether the debtor is in need of bankruptcy
relief" and that "the standard expenses that may be deducted by the debtor . . . are the expenses in
effect as of the petition date"); *In re Lenton*, 358 B.R. 651, 660 (Bankr. E.D. Pa. 2006)
(determining that "the presumption of abuse is just that, a presumption.  Relying largely upon
National and Local standards that quite often bear no relation to a debtor's real expenses, the
means test simply creates a bright line for the purpose of determining whether the Trustee or
other interested party will benefit from a presumption of abuse"); *In re Kogler*, 2007 WL
1376370 at *5-6 (Bankr. W.D. Wis. Mar. 30, 2007) (determining that the "best interpretation of
§ 707(b)(2) is to regard it as requiring a 'snapshot' of the debtors' finances at the time of filing");
*In re Haman*, 2007 WL 1175532 at *9 (Bankr. D. Del. April 20, 2007) ("Calculations under the
means test have been purposefully circumscribed by Congress and should not include future or
foreseeable circumstances"), *with In re Singletary*, 354 B.R. 455, 458-59 (Bankr. S.D. Tex. 2006)
(noting that the means test is both backward and forward looking and concluding that "the
Presumption of Abuse Motion may be based on a means test calculation that includes any
changed circumstances in the Debtors' position between the filing of the petition and the filing of
the motion to dismiss"); *Ray*, 362 B.R. at 683-85 (determining a secured debt cannot be included
in the means test calculation if a debtor intends to surrender collateral); *In re Harris*, 353 B.R.
304, 309-10 (Bankr. E.D. Okla. 2006) (same).

      [22] Recall, § 704(b)(1)(a) requires the UST to review a debtor's filed materials (including
Form 22A required of the debtor by § 707(b)(2)(C)) and file a statement of presumed abuse
                                                                                    (continued...)

MEMORANDUM OF DECISION - 12

of the test in capturing the debtor's actual financial circumstances or ferreting out

abuse, it appears the intent was to limit the inquiry to those factors arising prior to

filing and utilizing only the information required by § 707(b)(2)(A) and (C).

*In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa. 2007), agreed. It concluded

that "[t]he means test under 707(b)(2) adopts a mechanical approach to identifying

abuse by providing precise, specific formulae for computing a debtor's income and

expenses" and that Congress intended that "standardized or mechanical test" be the

tool courts use to identify abuse. 363 B.R. at 413 (footnote omitted). *Mundy*

noted that, even though Congress' professed intent and design was to identify

debtors who could repay debts and steer them away from chapter 7 into chapter 13,

the formulaic approach was mandated rather than an individualized inquiry into a

debtor's actual circumstances. *Id.* at 413-14 (citing *In re Randle*, 358 B.R. 360,

363-64 (Bankr. N.D. Ill. 2006)) (other citations omitted).

Similarly, *Kogler* noted that "[w]hatever the broad legislative agenda

behind BAPCPA, the goal in revising § 707(b) to incorporate the means test was to

create a rigid formula by which all debtors are to be judged, regardless of

circumstance." 2007 WL 1376370 at *5. *Kogler* continued:

> The best interpretation of § 707(b)(2) is to regard it as
> requiring a "snapshot" of the debtor's finances at the time of filing.
> In the end, it is essentially an eligibility test, a mechanical construct
> designed to restrict judicial review of the debtors' financial picture

---

[22](...continued)
within 10 days of the meeting of creditors.

MEMORANDUM OF DECISION - 13

> when arriving at a "presumption" of abuse.  It does not contain any provision which permits a court to review the debtors' actual finances or to discount their secured debt.

*Id.* at *6.[23]

This approach, though seemingly capable of reaching conclusions about a debtor's ability to pay divorced from reality and potentially at odds with Congress' professed intent, is required by the language used in BAPCPA.  The decision to replace fact-based inquiry with a rigid, mechanical test in chapter 7 is adequately, in fact unmistakably, evidenced.  The means test requires use of CMI, a retrospective view of income, and standardized expenses.  It is designed to provide a historical view of a debtor's financial situation at the petition date.[24]  Whether there are other, better ways to gauge a debtor's ability to pay is not a judicial decision but a legislative one.

Concerns over this change in § 707 are real, but they should be tempered by the fact that while the test creates a statutory "presumption," it is not a conclusive one.  The UST has the ability to decline to press a motion under the presumption if it concludes that the motion would not be "appropriate" (though it is required to

---

[23] *Kogler,* like *Mundy* and *Randle*, rejected the UST's argument that a debtor must exclude from expenses under § 707(b)(2)(A)(iii) secured debts related to property the debtor proposes to surrender.

[24] The means test as a hurdle to chapter 7 relief is markedly different from the incorporation of means test provisions for use in chapter 13 to establish projected disposable income of above median income debtors.  *See In re Meek*, 2007 WL 1830817, (Bankr. D. Idaho June 27, 2007) (addressing ability to consider post-petition facts and circumstances in chapter 13).

MEMORANDUM OF DECISION - 14

file a "statement" explaining that decision). *See* § 704(b)(2). And the debtor has

the ability, under § 707(b)(2)(B), to rebut the presumption by showing "special

circumstances" demonstrating that adjustments to income or additional expenses

should be considered in reaching a conclusion of whether the presumed abuse

really exists. Additionally, under § 707(b)(3), the court may consider in cases

where there is no presumption or the presumption is rebutted, whether there is

other evidence of the petition being filed in bad faith or if the "totality of the

circumstances" of the debtor's financial situation demonstrates abuse.[25]

Given these conclusions and the petition date focus of the § 707(b)(2)

means test in chapter 7 cases, the Court concludes Debtor may not deduct the

$785.00 monthly child support payment on his Form 22A. It was not a debt owed

at the time of filing.[26] The earliest the obligation to pay arose was when the

Temporary Order was entered on March 7, 2007. *See* Ex. A. Though the state

court's order and divorce decree makes the child support obligation retroactive to

---

[25] The court in *In re Singletary* explained the interplay between §§ 707(b)(2)(B) and 707(b)(3):

> If the Debtors want to present facts that do not appear in the means test, they must argue these facts as special circumstances under § 707(b)(2)(B). Similarly, if the UST wishes to have the court consider facts external to the means test, it must make a motion under § 707(b)(3) based on the totality of the circumstances and will not receive the benefit of the presumption of abuse.

354 B.R. at 465.

[26] Section 707(b)(2)(A)(iv) relied on by Debtor speaks to "priority claims" including child support. Operation of §§ 101(5), 101(10A), 101(12) and 507(a)(1) requires such claims to arise prior to the filing of the petition.

MEMORANDUM OF DECISION - 15

February 1, 2007 (pre-petition by four days), this does not change the fact that Debtor actually incurred the obligation post-petition.

Because Debtor may not take the $785.00 deduction, his monthly disposable income is $657.58. Therefore, he fails the means test under § 707(b)(2)(A) and the presumption of abuse arises.

### C.   Debtor has demonstrated "special circumstances" under § 707(b)(2)(B)

Section 707(b)(2)(B), quoted earlier, imposes on debtors both a substantive evidentiary burden and an explicit procedure. *See, e.g., Haman*, 2007 WL 1175532 at *3 (noting a debtor's obligation to "fulfill both the procedural and substantive requirements of section 707(b)(2)(B)" to rebut the presumption). This statute lays out the elements a debtor must meet.

Clauses (i) through (iii) of § 707(b)(2)(B) require the following. Debtors "shall . . . itemize" each additional expense or income adjustment. This requires identifying not just the nature of the suggested adjustment but also identifying and specifying its amount or financial impact. Debtors must also show, given the statute's language, that there is "no reasonable alternative" to each added expense or suggested change in income. Each item must be "documented" and accompanied by a "detailed explanation" of the "special circumstances" that make the expense or income adjustment "necessary and reasonable." Debtors must attest under oath to the accuracy of the information they provide. Then, under clause (iv) of § 707(b)(2)(B), debtors must show the impact of their proposed

MEMORANDUM OF DECISION - 16

income adjustments and/or additional expenses on the means test calculation.

Under this clause, the presumption will only be rebutted if such § 707(b)(2)(B)(i)

income adjustments and added expenses bring the final number below the means

test thresholds contained in § 707(b)(2)(B)(iv)(I) and (II), which echo those in

§ 707(b)(2)(A)(i)(I) and (II).  *See also In re Renicker*, 342 B.R. 304, 310 (Bankr.

W.D. Mo. 2006) (chapter 13 case analyzing § 707(b)(2)(B)(i)-(iv) and noting that

demonstration of special circumstances requires itemization, documentation,

detailed explanation, and showing of other statutory requisites).

Section 707(b)(2)(B)(i) provides two "examples" of special circumstances,

*i.e.*, "a serious medical condition or a call or order to active duty in the Armed

Forces."  This has led some courts to compare and contrast these examples with

the arguments advanced in a given case, to see if they reach the same degree.[27]

The UST adopts this approach and argues that Debtor's suggested "special

circumstances" should not be validated by the Court because they are not "outside

of the debtor's control" and "do not rise to the same level" as the statutory

illustrations.  Doc. No. 28 at 5-6.

The problem, of course, is that the two examples do not purport to be

---

[27]  *See*, *e.g.*, *In re Delunas*, 2007 WL 737763 at *2 (Bankr. E.D. Mo. Mar. 6, 2007)
(determining that circumstances should "rise to the same level" as those mentioned in the statute
and noting that the examples contemplate "circumstances beyond a debtor's reasonable control")
(citing *In re Tuss*, 360 B.R. 684, 701 (Bankr. D. Mont. 2007); *In re Johns*, 342 B.R. 626, 629
(Bankr. E.D. Okla. 2006)).

MEMORANDUM OF DECISION - 17

exclusive.[28]  Nor is there something necessarily inherent in these two examples

that will always be present in a BAPCPA-acceptable "special circumstance."  The

argument that a common trait in the examples is an act outside the debtor's control

is not compelling.[29]

There is, at least to this Court, limited utility in using either of these

examples or illustrations as archetypal.  The examples themselves are not key;

compliance with the requirements to itemize, document, verify, establish

reasonableness and necessity, and prove "no reasonable alternative" are key.  This

requires an analysis of the specific "special circumstance" alleged and an

evaluation of whether a debtor has adequately shown all the elements needed to

adjust the means test calculation, including itemization, documentation,

reasonableness, necessity, and lack of reasonable alternative for each income

adjustment or additional expense urged.

Therefore, the Court adopts a fact-specific, case-by-case approach to

---

[28]  *Haman* notes the words "such as" indicate an intent to provide a non-exhaustive list of illustrations rather than to constrict the statute, and further observes that legislative history supports the idea that the examples are not limiting.  2007 WL 1175532 at *5.  *See also Lenton*, 358 B.R. at 661 n.22.  *See also* 6 Collier on Bankruptcy ¶707.05[2][d] at 707-51-52 (Alan N. Resnick & Henry J. Sommer eds., rev. 15th ed. 2006) (noting potential special circumstance adjustments other than the two examples in § 707(b)(2)(B)(i), including some referenced in legislative comments, and noting the pleading and proof requirements of the BAPCPA-amended statute).

[29]  *See In re Armstrong*, 2007 WL 1544591 at *3 (Bankr. N.D. Ohio May 24, 2007) (noting that there is not "any language in § 707(b)(2)(B) that suggests that the special circumstance must be unanticipated or outside the control of the debtor"); *Haman*, 2007 WL 1175532 at *4-5 (rejecting argument that special circumstances must be of an involuntary nature or outside the control of the debtor); *In re Templeton*, 2007 WL 886010 at *3 (Bankr. W.D. Okla. March 8, 2007) (same).

MEMORANDUM OF DECISION - 18

assessing special circumstances under the several requirements of § 707(b)(2)(B).[30]
Those statutory requirements impose several limitations on what may be
considered a special circumstance, and the Court rejects the UST's argument that
further limitations are imposed by the non-exhaustive examples found in
§ 707(b)(2)(B).

The Court must next determine whether Debtor has met his burdens under
§ 707(b)(2)(B)(i)-(iv).  In the present case, the issue of special circumstance
centers, again, on the monthly $785.00 court-ordered payment Debtor must now
make for child support.  This expense is documented.  Exs. A, J.  The expense is
itemized.  Debtor testified under oath at the May 14 hearing to the accuracy of the
divorce decree which sets his monthly child support obligation.

The Court finds that Debtor has met the obligation to show that the expense
is "necessary and reasonable."  The state court has already effectively made a
determination of necessity and reasonableness.  *See* Idaho Code § 32-706(1) ("In a
proceeding for divorce or child support, the court may order either or both parents
owing a duty of support to a child to pay an amount *reasonable or necessary* for
his or her support and education.") (emphasis added).  Furthermore, Idaho courts
are required, in determining the amount of child support payments, to consider
among other things the parents' financial resources.  *See* Idaho Code § 32-

---

[30]  *See In re Delbecq*, 2007 WL 1408711 at *4 (Bankr. S.D. Ind. Apr. 26, 2007) (finding
the Code's language and legislative history strongly suggest a "fact-specific, case-by-case
inquiry"); *see also In re Pampas*, 2007 WL 1485352 at *5 (Bankr. M.D. La. May 21, 2007);
*Armstrong*, 2007 WL 1544591 at *2; *Templeton*, 2007 WL 886010 at *2.

MEMORANDUM OF DECISION - 19

706(1)(a) - (f).  Accordingly, a reasonableness determination has essentially already been made by the state court in the divorce proceeding as to the level of child support Debtor could and should pay.  This Court has been given no reason to second guess the state court's determination.

Similarly, the Court finds there is "no reasonable alternative" to paying the monthly child support obligation.  By failing to pay, Debtor would subject himself to mandatory income withholding as set out in the decree.  *See* Ex. J at 3.  There may be other consequences as well.  *Id.* (addressing lien imposition if delinquencies in support exceed the lesser of $2,000.00 or 90 days).[31]

Finally, Debtor must show how the added expense brings his disposable income below the threshold amounts contained in § 707(b)(2)(B)(iv).  Certainly the easiest and most accurate way to meet this requirement is to submit as an illustrative exhibit a suggested Form 22A that demonstrates the debtor's proposed

---

[31]  The UST suggests that a reasonable alternative exists because Debtor could make his child support payments by reducing or eliminating his charitable contributions or 401(k) contributions as shown on his schedules I and J.  *See* Doc. No 28 (brief) at 6.  The first of these arguments is foreclosed by § 707(b)(1) itself which states:  "In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions[.]"

The second argument conflates schedule I and J income and expenses with CMI determined under § 707(b)(2)(A) and shown on Form 22A.  Under BAPCPA, schedules I and J are not relevant to the means test presumption in § 707(b)(2).  And, as noted in *Skvorecz*, 2007 WL 1378348 at *3, Form 22A does not contain a line item for 401(k) contributions.  The UST's argument, therefore, does not result in change to Form 22A's bottom line, which is what § 707(b)(2)(B)(iv), discussed below, requires.

While the UST's 401(k) suggestion may impact a § 707(b)(3) analysis, the UST abandoned that contention.  *See supra* note 2.  And had the § 707(b)(3) argument not been abandoned, *Skvorecz*'s analysis regarding allowance of 401(k) contributions in chapter 13 under § 1322(f) and § 362(b)(19), and how those provisions impact Debtor's "ability to pay," would have to be considered.  2007 WL 1378348 at *2-3.

MEMORANDUM OF DECISION - 20

income adjustment or added expenses, and the ultimate affect of the same on the disposable income and presumptive abuse calculations.

Debtor filed a plethora of "amended" Forms and other documents.[32] However, as noted earlier, Debtor and the UST ultimately stipulated to $6,891.00 as Debtor's current monthly income, and they reduced their disputes over Form 22A expenses to solely the child support payment.  The evidence sufficiently supports the proposition that, if the $785.00 monthly support payment is considered as a "special circumstance" expense adjustment, Debtor would have negative monthly disposable income.[33]  Accordingly, the Court concludes Debtor has shown under § 707(b)(2)(B)(i) - (iv) "special circumstances" that rebut the presumption of abuse under § 707(b)(2)(A).

**CONCLUSION**

In conclusion, Debtor may not deduct as a means test expense under § 707(b)(2)(A)(iv) a support payment arising post-petition, and the UST's objection to Debtor's Form 22A is well taken.  Eliminating this claimed deduction results in the presumption of abuse arising under § 707(b)(2)(A).  However, the

---

[32] Admittedly, there are problems with certain of Debtor's submissions.  Several iterations of Form 22A were advanced, and ultimately, the parties had to negotiate a resolution of certain figures.  Additionally, in arguing against a § 707(b) presumption, Debtor used several versions of schedules I and J (as initially filed, or amended, or proposed).  This was not a particularly helpful approach.  These schedules have been supplanted, in chapter 7 abuse analysis, by the precise factors in § 707(b)(2)(A) and captured in Form 22A.  *See supra* note 31.

[33] Disposable income would be ($127.42) after his $657.58 disposable income is reduced by the $785.00 expense.

MEMORANDUM OF DECISION - 21

same $785.00 monthly child support payment has been demonstrated by Debtor to represent a "special circumstance" and the presumption of abuse has been rebutted under § 707(b)(2)(B).  The UST's motion will be denied.  The Court shall issue an appropriate Order.

DATED:  July 6, 2007

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 22